Justin GRUBBS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–01322–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 17, 2005.

Discretionary Review Refused Sept. 14, 2005.

Josh Schaffer, The Schaffer Firm, Houston, for Appellant.

Lori Deangelo Fix, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

LAURA C. HIGLEY, Justice.

After his pretrial motion to suppress evidence was denied, appellant, Justin Grubbs, pleaded guilty to misdemeanor possession of marihuana. The trial court deferred its finding of guilt, placed appellant on community supervision for nine months, and assessed a fine of $150.00.

In his sole issue, appellant contends that the trial court erred in denying his motion to suppress marihuana seized as a result of

an unlawful entry into his university dorm room.

We affirm.

## BACKGROUND

Appellant and Benjamin Marsh were students residing in Room 101 of Law Hall, a University of Houston ("U of H") dormitory. At approximately 11:20 p.m., on September 15, 2003, Shaun Deskins, the resident assistant ("R.A.") on duty in Law Hall, received a complaint concerning the odor of marihuana coming from Room 101.

After confirming the odor, Deskins obtained the master key to Room 101 and instructed another person to contact campus police. Officers Tinney and Roney, of the U of H Police Department, met Deskins in the hallway outside of Room 101 and confirmed the odor of marihuana emanating from the room. One of the officers knocked on the door, but there was no response. Pursuant to U of H departmental procedure, Deskins announced through the door that he was "the R.A. on-call" and that he was "keying in."

Deskins unlocked the door, which opened inward, and stepped into the room enough to prop the door open. The design of the room was such that a person standing in the doorway could not see the whole room. Upon stepping or leaning into the room, Deskins could then see appellant and Marsh. The officers remained in the hallway outside of the room and could not see into the room. At some point, appellant and Marsh moved to the doorway. Once the officers could see them from the hallway, Roney asked if they "minded if [the officers] came in." One of the boys said, "No, go ahead and come on in."

Inside the room, the officers noted a very strong odor of burned marihuana and determined that Marsh showed signs of marihuana intoxication. The officers asked appellant and Marsh if they had been smoking marihuana. Appellant and Marsh did not respond. Tinney and Marsh then went into the hallway, while Roney spoke with appellant inside the room.

Roney again asked appellant if there was marihuana in the room. Appellant pulled a clear plastic bag from underneath a blanket on Marsh's bed. The bag contained a green, leafy substance, rolling papers, and a pipe. Appellant admitted that the contents of the bag were his. The officers then arrested appellant and Marsh.

Appellant and Marsh were charged with possession of less than two ounces of marihuana. After a hearing, the trial court denied appellant's motion to suppress the marihuana. No formal written findings of fact were entered.

### Standard of Review

A trial court's ruling on a motion to suppress evidence will not be set aside unless an abuse of discretion is found. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *State v. Derrow*, 981 S.W.2d 776, 778 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). We must afford almost total deference to the trial court's determination of facts supported by the record, especially when the findings are based on the evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

In reviewing the trial court's ruling, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give almost total deference to the trial court's determination of the historical facts and conduct a *de novo* review of the trial court's application of the law to those facts. *Id.* The trial court is the exclusive finder of

fact in a motion to suppress hearing, and it may choose to believe or disbelieve any or all of any witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

■ Where, as here, the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327–28. We must assume the trial court made implied findings of fact that are supported by the record. *Id.* Because we do not determine credibility, our review of reasonable suspicion, probable cause, consent, and mixed questions of law and facts becomes a *de novo* review of legal questions. *Derrow*, 981 S.W.2d at 778 (citing *Ornelas v. United States*, 517 U.S. 690, 697–99, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996)).

## ANALYSIS

Appellant brought a motion to suppress the marihuana seized from his room, all testimony concerning the events in question, and all oral or written statements made by appellant. Appellant based his motion on state and federal constitutional grounds, as well as on a state statutory ground. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2004–2005). On appeal, however, appellant solely raises a claim that the marihuana was seized unlawfully under the Fourth Amendment to the United States Constitution.

■ In this issue, appellant contends that the trial court erred in denying his motion to suppress marihuana that was seized as a result of an unlawful entry of his university dorm room. Appellant contends that Deskins was not authorized to unlock appellant's door for campus police, nor could Deskins consent to a search by campus police. Thus, asserts appellant, the subsequent warrantless entry by police

and the seizure of the marihuana were unlawful.

## A. Fourth Amendment Protections

■ The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that the Fourth Amendment generally imposes a warrant requirement for searches. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *see Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). "A 'search' occurs when the government violates a subjective expectation of privacy that society considers objectively reasonable." *Dawson v. State*, 106 S.W.3d 388, 391 (Tex. App.-Houston [1st Dist.] 2003, no pet.) (citing *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042–43, 150 L.Ed.2d 94 (2001)). It has been established that warrantless searches are "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357, 88 S.Ct. at 514.

■ One of the established exceptions to both the requirements of a warrant and probable cause is a search conducted pursuant to consent. *Corea v. State*, 52 S.W.3d 311, 315–16 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973)). The State can establish the lawfulness of an illegal search through bearing the burden of proving, by clear and convincing evidence, that consent was freely and voluntarily given. *Id.* at 316 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797

(1968)). Hence, the State must show that the consent was positive and unequivocal and not merely an acquiescence to a claim of lawful authority. *Id.* There must be no evidence of coercion. *Id.*

■■■■ Thus, an individual may waive his rights under the Fourth Amendment by consenting to a search. *Id.* Whether consent was voluntary is a question of fact and must be analyzed under the totality of the circumstances. *Id.* (citing *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48 and *Paulus v. State,* 633 S.W.2d 827, 850 (Tex.Crim.App.1981)).

## B. Authority to Enter

■■ The Fourth Amendment protects people, not places. *Katz,* 389 U.S. at 351, 88 S.Ct. at 511. Indeed, courts have held that "a student who occupies a college dormitory room enjoys the protection of the Fourth Amendment." *Piazzola v. Watkins,* 442 F.2d 284, 289 (5th Cir.1971); *see Morale v. Grigel,* 422 F.Supp. 988, 997 (D.N.H.1976) (considering dormitory room to be "a home away from home"); *Devers v. S. Univ. and A & M Coll.,* 712 So.2d 199, 204–05 (La.App.1998) (finding that "[a] dormitory room is a student's house for all practical purposes, and a student has the same interest in the privacy of his room as any adult has in the privacy of his home, dwelling, or lodging"). In the instant matter, appellant had an expectation of privacy in his dorm room and is thus afforded Fourth Amendment protection. In addition, the Court of Criminal Appeals has held that "[t]he odor of marijuana, standing alone, does not authorize a warrantless search and seizure in a home." *State v. Steelman,* 93 S.W.3d 102, 108 (Tex. Crim.App.2002) (analyzing warrantless entry under Code of Criminal Procedure provisions, but applying Fourth Amendment discussion in *Johnson,* 333 U.S. at 13–14, 68 S.Ct. at 369). However, the Court of

Criminal Appeals has recently held that the odor of marihuana emanating from a home, among other things, provides police with probable cause to believe that criminal activity is occurring inside the home. *Estrada v. State,* 154 S.W.3d 604, 609 (Tex. Crim.App.2005).

To support his contention that the R.A. entered his room unlawfully, appellant cited a provision in the Residence Hall Contract ("Contract") providing that, "[t]he university reserves the right ... to enter any room for the purpose of inspection, repair, cleaning, inventory, health and safety hazards, or other emergencies," and argued that there was no evidence that the R.A. entered his room for any of these purposes. The record supports appellant's assertion that the R.A. entered his room to investigate evidence of criminal activity, and not a fire.

However, the State provided other justification for the entry. The Contract also provides the following:

> The student agrees as a condition of this agreement to comply with all University and Student Housing rules, regulations, policies and procedural information, incorporated herein by reference to the "University Student Handbook," which are now in effect or are amended, or enacted during this term of agreement.

Thus, appellant's conduct in his dorm room was not only governed by the Contract, but also by the provisions in the Student Handbook ("Handbook"). Appellant concedes on appeal that he was subject to these provisions.

The Handbook provides, under its Residential Life and Housing section, that "[a]ll University of Houston residents are expected to observe local, state, and federal laws.... The Handbook outlines the residents' responsibilities as members of the educational community." The follow-

ing behaviors are prohibited in the residential community and are considered a violation of policy:

 I. Alcohol/Drugs

 1.1 Being present during or participating in the illegal use, [or] possession, . . . of drugs prohibited under the Controlled Substances Act of Texas.

(Marihuana is a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.032 (Vernon 2003)).

In addition, the Handbook includes University Policies ("Policies") under which "[s]tudents may be subjected to searches and seizures as authorized by university policies and federal, state, and local laws." Further, the Policies provide that,

> [i]n all cases involving public law, statutes, ordinances, student life policies, or university regulations, university action may be taken. . . . Violations occurring within the residence halls may be resolved by the appropriate residence halls staff and/or referred to the Dean of Students Office.

An R.A. is a trained resident-hall staff member who is charged with resolving such violations in keeping with his duty to maintain community standards of behavior.

In maintaining such standards, the Handbook, Residential Life and Housing, Room Inspection Procedure, states: .

 1. University officials, including residence halls staff, . . . may enter rooms *to fulfill their daily duties,* in cases of emergencies, *or in cases of reasonable suspicion of activity endangering the individual or the community.*

(Emphasis added.) Appellant concedes on appeal that he was subject to this provision.

In sum, the Handbook provides ample authority for the R.A.'s entry. Appellant agreed to abide by university policies outlined in the Handbook when he signed the housing Contract. The evidence supports the State's argument that the R.A. investigated the marihuana odor in accordance with his duties as an R.A. to monitor the safety of the people in the dorm rooms and to investigate possible disciplinary violations. As discussed above, appellant contracted this investigatory right to the university. Hence, he waived any Fourth Amendment objections to the university's reasonable exercise of that right. *See Utah v. Hunter,* 831 P.2d 1033, 1037 (Utah Ct.App.1992) (concluding that by signing residence hall contract prohibiting the possession or consumption of alcohol and reserving the right to enter and inspect in order to enforce the regulations at any time "to protect and maintain the property of the University, the health and safety of its students, or whenever necessary to aid in the basic responsibility of the University regarding discipline and maintenance of an educational atmosphere," the student waived any Fourth Amendment objections to university's exercise of that right). The constitutionality of the policy on its face is not at issue.

### 2. *Execution of Entry Policy*

█ Appellant argues that, even if the R.A. was authorized under university policy to enter the room, he failed to follow that policy when he called police prior to entering the room and prior to actually seeing illegal drugs.[1] However, as ex-

---

**1.** The university's Paraprofessional Staff Guide outlines its Operating Procedures and Policies. Included, in its Incident Response Procedures, is a "guideline" for R.A.s in dealing with violations of the university's policy prohibiting marihuana use.

**Marijuana**

plained previously, it is the provisions in the Handbook that are incorporated into the housing Contract, signed by appellant, that authorize residence hall staff to enter a student's room to investigate "any activity endangering the individual or the community." The Paraprofessional Staff Guide (the "Guide") is not incorporated into the Contract. Hence, any violation of the Guide is an issue properly handled by the R.A.'s supervisor and has no effect on the legality of the entry.

In addition, appellant asserts,

[a]ssuming *arguendo* that [the R.A.] had the right to enter the room without the police to enforce university policy, he could not give that right to police when the primary purpose of the entry was to investigate the odor of marihuana and to search for evidence of criminal activity. Because [the R.A.] contacted the police once he smelled the marihuana, entered the room with them by his side, and immediately turned over the investigation to them, he acted in concert with the police and unlawfully delegated to them the university's limited right to enter and inspect dorm rooms.

There is no support in the record for appellant's argument that the R.A. opened the door "for police," entered the room with them "by his side," or "immediately turned over the investigation to them." To the contrary, the testimony showed that the R.A. opened the door himself and stepped into the room, while the officers waited in the hallway. Neither the R.A. nor the officers could see appellant or his roommate when the door was opened. At some point, appellant and his roommate moved to the doorway and officers could then see them. The testimony showed that the officers then asked if they could come in. Appellant concedes that appellant or his roommate invited the officers in. Hence, the officers did not "immediately take over" the investigation; rather, the evidence showed that the officers were there "basically at the beginning for the safety of the R.A." and did not become involved until they were invited in by appellant or his roommate.

In this question of first impression in Texas, appellant heavily relies upon *Piazzola v. Watkins*, 442 F.2d 284 (5th Cir. 1971), to support his argument that the conduct of the R.A. was unlawful. Appellant argues that searching for evidence of a crime is unconstitutional. However, *Piazzola* is clearly distinguishable and is not persuasive. There, *state narcotics agents and city police requested* the cooperation of university officials in searching 6 to 7 dorm rooms in 2 different dormitories during final exams and over a holiday break. *Id.* at 286. Some of the rooms were searched more than once. *Id.* In each instance, there was neither a search warrant *nor consent by a resident of the room. Id.* The court reasoned that it was, in essence, "a fishing expedition." *Id.* at 287. The court found that the university indeed had "broad supervisory powers" to maintain the educational community; however, the *second* search of the defendant's room involved a greater invasion of privacy than could be justified by the university's supervisory interests. *Id.* at 289–90.

---

Should you come across the odor or have it reported to you,
1. Try to determine which room the smell is coming from.
2. Try to get SSOC back-up very quickly with floor master keys.
3. Upon arrival of the back-up, knock on the door and announce yourself.
4. If there is no response, or if there is a delay, repeat yourself and indicate that you are keying in.
5. Once you are in the room, take in as much information as you can: what you smell, what you see (window open, fan, towels under the door, paraphernalia).
6. If you see drugs, then call police.

Thus, the unconstitutionality derived from the nature of the search. This was a blanket sweep initiated by police and is distinguishable from the case at hand.

Here, we have a single entry by an R.A., into a specific room, based on reasonable suspicion that a violation of university policies was in progress, and pursuant to a specific set of policies that appellant had notice of and consented to, that charge the R.A. with maintaining community standards and resolving violations of university policy. While the court held in *Piazzola* that the university clearly had no authority to consent to or join the police in a search for evidence of a crime, here there is no evidence that the R.A. consented to an entry or search by the officers, or that the R.A. joined in any such search.

Appellant cites several cases to support his position that an R.A. may not consent to an entry by police into a dorm room.[2] However, because there is no evidence here that the R.A. consented to allow police into the room or consented to any form of search of the room, these cases are not dispositive.

 Moreover, there is no evidence that the officers used coercion to gain entry to the room. *Cf. Mitchell v. State*, 831 S.W.2d 829, 832 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd). No seizure occurs when police officers simply ask questions. *Id.* at 832 & n. 3 (citing *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)). Further, the State need not prove that the one giving permission knew he had a right to withhold his consent. *Schneckloth*, 412 U.S. at 226–27, 93 S.Ct. at 2047; *Zepeda v. State*, 638 S.W.2d 542, 545–46 (Tex.App.-Houston [1st Dist.] 1982, no pet.).

We hold that campus police officers did not violate appellant's constitutional rights when they entered appellant's dorm room upon invitation.

## C. Seizure of Marihuana

 "No evidence obtained by an officer or other person in violation of any provisions ... of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PRO. ANN. art. 38.23(a) (Vernon Supp.2004–2005). Furthermore, "all evidence obtained by searches and seizures in violation of the [United States] Constitution is ... inadmissible in a state court" via the federal exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

 Here, appellant not only consented to entry by campus police, but he voluntarily consented to give the officers the marihuana. There is no evidence that either officer engaged in a search of the room. Rather, Roney simply asked appellant if there was marihuana in the room. Appellant voluntarily reached under a blanket on Marsh's bed and pulled out a bag containing green, leafy substance, rolling papers, and a pipe. Appellant admitted that he owned the contents. A defendant who voluntarily delivers something to police cannot later complain of an illegal search and seizure. *Weaver v. State*, 159 Tex.Crim. 225, 262 S.W.2d 510, 510 (1953).

We hold that appellant's constitutional rights were not violated when campus police received marihuana that appellant voluntarily relinquished. The marihuana was

2. Specifically, appellant cites *Commonwealth v. McCloskey*, 217 Pa.Super. 432, 272 A.2d 271, 273 (1970); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *United States v. Poole*, 307 F.Supp. 1185, 1188–89 (E.D.La.1969).

lawfully obtained and appellant's motion to suppress was properly denied.

Appellant's sole issue is overruled.

## CONCLUSION

We affirm the judgment of the trial court.