**Opinion issued August 27, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-12-00624-CR**
**01-12-00625-CR**
**01-12-00626-CR**

———————————

**DARRION J. GARDNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 396th District Court**
**Tarrant County, Texas**
**Trial Court Case Nos. 1109055W, 1109056W, and 1109058W**

---

**MEMORANDUM OPINION**

In 2008, a Tarrant County grand jury charged Darrion Gardner with three

felony offenses of burglary of a habitation.[1] In accordance with Gardner's plea

---

[1]    Pursuant to its docket equalization authority, the Texas Supreme Court transferred this appeal from the Fort Worth Court of Appeals to this Court. *See* TEX. GOV'T

agreement with the State, the trial court deferred entering findings of guilt in each case and placed Gardner on five years' community supervision. In February 2012, the State petitioned to adjudicate Gardner's guilt. The trial court adjudicated Gardner's guilt and sentenced him to twelve years' confinement and payment of restitution.  Gardner challenges the evidentiary basis for the revocation and further contends that the trial court erred in denying his motion to suppress certain evidence. Finding no error, we affirm.

## Background

The petition to adjudicate guilt enumerated several violations of the terms and conditions of Gardner's community supervision. Following an administrative hearing on the petition, the trial court found that Gardner had violated two of the conditions listed in the State's petition by: (1) committing aggravated robbery and (2) failing to attend a scheduled visitation with his community supervision officer. Gardner's community supervision was subject to the following terms and conditions:

- Commit no offense against the laws of this State.
- Abstain from the illegal use of controlled substances, marijuana, cannabinoids, or excessive consumption of any alcoholic beverage.

---

CODE ANN. § 73.001 (West 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

- Permit the community supervision officer to visit you at your home or elsewhere at any time.
- Work faithfully at suitable, full time employment, and furnish proof of your employment to your supervision officer.
- Own or possess no firearms.

The trial court supplemented Gardner's conditions of community supervision in October 2008 to add conditions prohibiting Gardner from carrying or possessing a firearm or other dangerous or deadly weapons. The supplemental conditions also required Gardner to voluntarily submit to search and seizure by a peace officer investigating an offense that involves a firearm or narcotics. Gardner signed the supplemental conditions form, acknowledging that he received his conditions of community supervision. In December 2011, the court imposed additional conditions on Gardner's community supervision, requiring him to observe a curfew and prohibiting him from using, possessing, or consuming any alcoholic beverage.

In its petition to adjudicate Gardner's guilt, the State charged that Gardner violated the terms and conditions of his community supervision by, among other things, committing a new criminal offense, namely, aggravated robbery. At the revocation hearing, Sandra Rodriguez testified that, as she arranged shopping carts near the end of her shift at a Tarrant County Walgreens, Gardner entered the store. Gardner wore a black and gray hooded jacket with the hood pulled up, a wig with long, shiny black hair, and a black ski mask over his face. Gardner approached

3

Rodriguez, and pointed a gun directly at her face. Gardner ordered Rodriguez to take him to the safe. Rodriguez went to a door at the back of the store that opened into a vestibule in front of the manager's office door. Rodriguez entered the code on the keypad to unlock it. Rodriguez tried to slip in and close the door quickly, but Gardner managed to get his head inside before it closed. Rodriguez pulled off Gardner's ski mask. He quickly covered his face, ducked down, and fled. After Gardner left the store, Rodriguez knocked on the store manager's office door. He responded, and Rodriguez told him that someone was trying to rob the store. He ran out into the store, telling Rodriguez to stay in the office. Rodriguez used the telephone to call 911. She reported the robbery and described the suspect to police. At the revocation hearing, Rodriguez confirmed that she had reviewed the Walgreens surveillance video. It depicted the events as she remembered them.

The trial court also heard testimony from Detective B. Jones of the Arlington Police Department. In January 2011, he was working as a patrol officer during the midnight-to-7:00 A.M. shift when he received an emergency call reporting an armed robbery in progress at the Walgreens. When Detective Jones arrived at the address, he noticed a vehicle parked at the carwash next to the Walgreens. Its hood was raised, and Gardner was standing in front of the car and looking inside the hood.

4

Another police officer, Officer Vo, detained Gardner, and Detective Jones went inside the Walgreens, viewed the surveillance video, and spoke with Rodriguez about the incident. He returned outside to speak with Gardner. Gardner explained that his car had broken down at a nearby intersection, but he managed to get it to the car wash. Gardner signed a form consenting to the officers' search of his car. Detective Jones discovered a loaded handgun and a black curly wig in the trunk.

Because the suspect had been wearing the wig, his face had been covered, and he held a gun to Rodriguez's face, she was uncertain that Gardner was the suspect. But she confirmed that the wig and the gun retrieved from Gardner's car trunk were the ones used during the robbery.

## Revocation of Community Supervision

### I.    Standard of review

A community supervision revocation proceeding is neither criminal nor civil in nature—rather, it is an administrative proceeding. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Canseco v. State*, 199 S.W.3d 437, 438 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). At a revocation hearing, the State must prove by a preponderance of the evidence that the defendant has violated a condition of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006) (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex.

Crim. App. 1974)); *Canseco*, 199 S.W.3d at 438. Showing "a single violation is sufficient to support a revocation." *Canseco*, 199 S.W.3d at 439.

Our review of an order adjudicating guilt and revoking community supervision is limited to determining whether the trial court abused its discretion in ruling that the defendant violated the terms of his community supervision; in other words, if the greater weight of the credible evidence would create a reasonable belief that the defendant has violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 763 (quoting *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)); *Duncan v. State*, 321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We examine the evidence in the light most favorable to the trial court's order. *Duncan*, 321 S.W.3d at 57; *Canseco*, 199 S.W.3d at 439. "The trial court is the exclusive judge of the credibility of the witnesses and determines if the allegations in the motion are sufficiently demonstrated." *See id.*; *Galvan v. State*, 846 S.W.2d 161, 162 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

## II.    *Evidentiary complaints*

### A. *Admission of statement*

Gardner contends that the trial court should have suppressed his statement to police that he was having car trouble because he made the statement during a custodial interrogation before he was read his *Miranda* rights. We evaluate a trial

court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determination of historical facts if the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

A person's Fifth Amendment rights do not come into play before an investigation reaches a custodial stage. *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990). *Miranda*'s required warnings arise when a person being questioned by law enforcement officials has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). In

determining whether an individual was in custody, we examine the circumstances surrounding the interrogation to determine whether the law enforcement official had formally arrested the individual, or had otherwise restrained his freedom of movement "to the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994). We also consider the questions the officer poses, because not all statements are products of interrogation. *See Innis*, 446 U.S. at 303; *Jones v. State*, 795 S.W.2d 171, 174 n.3 (Tex. Crim. App. 1999). General and routine questions do not constitute interrogation. *Ruth v. State*, 167 S.W.3d 560, 571 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Detective Jones asked Gardner what he was doing at the car wash. Responses to this type of preliminary question by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Id.* at 568–69; *see also Jones*, 795 S.W.2d at 174 n.3 ("For example, routine inquiries, questions incident to booking, broad general question such as 'what happened' upon arrival at the scene of a crime, and questions mandated by public safety concerns[,] e.g. 'where did you hide the weapon' when the weapon has just been hidden in the immediate vicinity."). The trial court did not err in admitting Gardner's explanation for his presence at the car wash.

Gardner complains that the State failed to offer evidence that justifies a detention, beyond determining the reason that the car was parked at the car wash.

8

But Gardner neglects to consider other contemporaneous circumstances that gave rise to the officer's reasonable suspicion—namely, that the officers had just arrived at the location in response to an emergency call about an armed robbery in progress at the Walgreen's next door, Gardner was the only person in the area, and Gardner's explanation about how he pushed his stalled car, without any assistance, from a nearby intersection into the carwash bay—the bay closest to the Walgreen's—did not make sense. "The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly." *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). We hold that these circumstances authorized the officers present to prolong Gardner's detention.

## B. Admission of evidence found in Gardner's car

Gardner complains that the trial court should have excluded the handgun and wig found in the trunk of his car, because he did not validly consent to the officers' search of his car. We disagree. As a term of his community supervision, Gardner agreed to submit to search and seizure by any peace officer investigating any offense involving a firearm. As a result, he waived his right to invoke his constitutional protection against unreasonable search and seizure. *Cf. Grubbs v. State*, 177 S.W.3d 313, 318–19 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (by residing in college dormitory, defendant agreed to adhere to university policies,

including the provision allowing university officials and staff to "enter rooms to fulfill their daily duties, in cases of emergencies, or in cases of reasonable suspicion of activity endangering the individual or the community," and thereby waived his right to challenge university's inspection of his room after resident assistant detected marijuana odor emanating from room). If Gardner had refused to consent to the search, he would have violated a condition of his community supervision. Whether he felt coerced into consenting to the search, therefore, does not affect the outcome of his case. *See Canseco*, 199 S.W.3d at 439.

### III. *Support for finding that Gardner violated the terms of his community supervision by committing the robbery*

Gardner challenges the evidence in support of the trial court's findings of true with respect to the State's allegations of violations of his community supervision. Relying on *Moore v. State*, 640 S.W.2d 300 (Tex. Crim. App. 1982), Gardner complains that the finding that he committed the robbery is flawed, because the circumstantial evidence adduced at trial did not exclude the possibility that another person was involved or committed the robbery. *Moore*, however, is no longer the rule in Texas. *See Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000); *see also Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009) (explaining that "[c]ourts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt," and

10

observing that circumstantial evidence is reviewed under the same standard as direct evidence).

The charge against Gardner alleges that he, "on or about the 22[nd] day of January 2012, in the County of Tarrant and State of Texas, did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Sandra Rodriguez in fear of imminent bodily injury or death, and the defendant used or exhibited a deadly weapon, to wit: a firearm." This charge accurately tracks the first-degree felony offense of aggravated robbery set forth in the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011).

The evidence before the trial court shows that Gardner held Rodriguez at gunpoint, demanded that she open the safe, and fled the store only after she uncovered his head, in an apparent effort to escape detection. The police found him near the Walgreens and found the loaded gun and the wig he used to disguise himself in the trunk of his car. Rodriguez identified the wig and the gun as having been used in the robbery and accurately described the robber's height and his clothing. The trial court did not abuse its discretion in concluding that the greater weight of the credible evidence created a reasonable belief that Gardner violated a condition of his community supervision by committing aggravated robbery.

11

***IV.*** *Support for finding that Gardner violated the terms of his community supervision by failing to be present for the supervisory officer's home visit*

Gardner further contends that the evidence that he violated the home visit condition of his probation is ambiguous and, therefore, insufficient to support the trial court's finding. Officer J. Durand, who had served as Gardner's probation officer, testified that the field officers were required to visit the probationers at their home at least once a month. He explained that the visits could be scheduled or random. The probation records demonstrated that a field officer attempted to meet with Gardner at his home on November 30, 2011, but Gardner was not present. Gardner complains that the officer was scheduled to arrive at 4:00 P.M., but did not arrive until almost two hours later. Gardner did not answer the door to permit the visit. He complains that the evidence was not clear whether the officer had scheduled the appointment for 4:00 P.M. or whether he instructed Gardner to be available sometime after 4:00 P.M. Because we have already determined that the trial court reasonably could have concluded that Gardner violated the terms of his community supervision by committing a robbery, we need not address Gardner's argument with respect to the home visit. *See Canseco*, 199 S.W.3d at 439.

12

## Conclusion

We hold that the trial court acted within its discretion in adjudicating Gardner's guilt based on the evidence presented. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Higley, and Bland.

Do not publish. TEX. R. APP. P. 47.2(b).