**Opinion filed September 24, 2015**



## In The

# Eleventh Court of Appeals

———————

## No. 11-13-00277-CR

———————

## THE STATE OF TEXAS, Appellant

## V.

## MIKENZIE RENEE RODRIGUEZ, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR22-398**

### O P I N I O N

Mikenzie Renee Rodriguez was indicted for possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). She filed a pretrial motion to suppress in which she challenged the search of her college dorm room and any statements she made in connection with her arrest. The trial court granted her motion, and the State appealed. We affirm.

*Background Facts*

Appellee was a student at Howard Payne University, a private university in Brownwood. Appellee lived on campus in Veda Hodge Hall. In September 2012, Miriam Mackey and Catherine Mullaney, the resident assistants on duty, conducted a room check of Appellee's dorm room. They conducted this room search pursuant to their duties as resident assistants in accordance with the policies and procedures of Howard Payne University for students living in on-campus housing. The room check was not performed at the request of any law enforcement agency.

Mackey and Mullaney found a baggie of marihuana in a trunk located in Appellee's room. Mackey and Mullaney contacted Nancy Pryor, the resident director at Howard Payne University, to report this discovery. Pryor instructed Mackey and Mullaney to thoroughly search the room. They subsequently found two pills inside a box of matches and a marihuana pipe wrapped in a sock. They placed the items in the middle of the floor of the dorm room. Pryor then called Howard Payne University's Department of Public Safety.

Officer Robert Pacatte, with the Howard Payne University Department of Public Safety, responded to the call. Pryor initially met Officer Pacatte at the entrance to the dorm. He subsequently accompanied Pryor to Appellee's dorm room. Officer Pacatte stepped inside the dorm room and saw the items on the floor. He did so without obtaining a search warrant or consent from either Appellee or her roommate. Officer Pacatte took pictures of the items and spoke with Adrienne Sanchez, Appellee's roommate. Sanchez informed him that the items belonged to Appellee.

Officer Pacatte then contacted the Brownwood Police Department. The Brownwood Police Department and the Howard Payne University Department of Public Safety had an interlocal agreement concerning crimes committed on campus. Corporal Aaron Taylor of the Brownwood Police Department responded to the dorm

2

room. Appellee arrived at her dorm room later. She was given her *Miranda*[1] warnings, and she admitted that the items were hers.

Appellee filed a motion to suppress the evidence seized and any statements made before, during, or after the search. The trial court held a hearing on the motion and, after initially taking the matter under advisement, granted Appellee's motion to suppress. The trial court subsequently entered written findings of fact and conclusions of law.

## *Analysis*

The State asserts four issues challenging the trial court's ruling on the motion to suppress. We note at the outset that the State has limited rights of appeal in criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West Supp. 2014). The State is entitled to appeal an order of a court in a criminal case that grants a motion to suppress evidence if jeopardy has not attached and if the elected prosecutor certifies to the trial court that the appeal is not taken for the purpose of delay and that the suppressed evidence is of substantial importance to the case. *Id.* art. 44.01(a)(5). The elected district attorney for Brown County personally signed the notice of appeal filed in this case certifying the matters required to invoke this court's jurisdiction to review the trial court's interlocutory order granting the motion to suppress. *See State v. Redus*, 445 S.W.3d 151, 154–55 (Tex. Crim. App. 2014).

A trial court's ruling on a suppression motion is reviewed on appeal for an abuse of discretion, with almost complete deference given to its determination of historical facts, especially if those facts are based on an assessment of credibility and demeanor. *See Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013) (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). The same deference is afforded the trial court with respect to its rulings on application of the

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility. *Id.* For mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a de novo review. *Id.* We review de novo a trial court's application of the law to the facts. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Regardless of whether the trial court granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *Wade*, 422 S.W.3d at 666; *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). If the trial court makes express findings of fact, as the court did in this case, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports these factual findings. *Valtierra*, 310 S.W.3d at 447.

In its first issue, the State argues that the trial court erred by granting Appellee's motion to suppress "when Appellee does not allege any wrongdoing on the part of university officials who located and seized the evidence, because the actions of law enforcement did not implicate the Fourth Amendment." The State contends that Officer Pacatte's "action of stepping across the threshold of Appellee's dorm room and viewing the contraband laying exposed to view on the floor" did not implicate the Fourth Amendment. The State argues that, "[o]nce university officials located a controlled substance in Appellee's room," Appellee no longer had "a subjective expectation of privacy that law enforcement would not be called to her dorm room" that society would recognize as reasonable. The State suggests that we should apply the analysis from *State v. Hardy* to conclude that Appellee could not have had a reasonable, subjective expectation of privacy that law enforcement would not be called in these circumstances. *State v. Hardy*, 963 S.W.2d 516, 523–24 (Tex. Crim. App. 1997). The State also challenges the trial court's express finding that

4

the Howard Payne University Department of Public Safety and the Brownwood Police Department conducted a search.

We note at the outset that the State did not argue this theory at the suppression hearing. Instead, the State argued that there was no state action because the resident assistants were the actors that conducted the search. The State also argued that the incriminating evidence was in plain view of Officer Pacatte upon his arrival at Appellee's dorm room. Nevertheless, the trial court entered written findings of fact and conclusions of law that implicitly overruled the theory now advanced by the State. These findings of fact and conclusions of law are as follows:

### Findings of Fact

. . . .

23. Howard Payne University Department of Public Safety and the City of Brownwood Police Department entered the residence of Adrienne Sanchez and [Appellee] when neither occupant was present and conducted a search that included – taking photographs of the room, investigating, and looking around the room. The officers who conducted the search seized items believed to be a controlled substance, paraphernalia, and marijuana.

24. Neither Howard Payne University Department of Public Safety nor the City of Brownwood Police Department obtained consent from Adrienne Sanchez or [Appellee] to conduct a search for the purposes of a criminal investigation or prosecution.

. . . .

### Conclusions of Law

1. [Appellee] and her roommate consented to search by the University officials in the furtherance of health and safety concerns by signing the University Housing Agreement, but did not waive their rights under the Fourth Amendment of the United States Constitution and the applicable provisions of the Texas Constitution to protection from unreasonable searches and seizures.

. . . .

5

4. Officer Pacatte, as a licensed peace officer, was an officer of the State and his action is therefore subject to the limitations of the Fourth Amendment.

. . . .

6. Officer Pacatte did not have consent from [Appellee] or her roommate to search the dorm room.

. . . .

13. Without a search warrant, consent, exigent circumstances, or the plain view doctrine, Officer Pacatte's actions constituted an unreasonable search and seizure and therefore the evidence seized as a result of that search should be suppressed.

14. The issue before the Court in the hearing on the Motion to Suppress was the action of the two certified Texas police departments, Howard Payne University Department of Public Safety and the City of Brownwood Police Department, in conducting a search of a residence for the purposes of criminal prosecution in light of the protections granted to individuals under the Fourth Amendment of the *United States Constitution* and Article 1, Section 9 of the *Texas Constitution. U.S. Const. amend. IV*; *see also Tex. Const. art. I, § 9*; Tex. Crim. Proc. Code Ann. § 38.23(a) (West 2012).

. . . .

16. Consent to search could only have been given by [Appellee] or Ms. Sanchez under the court generated doctrine of common authority. A person with mutual use and joint access of the property is said to have such common authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *see also U.S. v. Matlock*, 415 U.S. 164, 171 (1974); *see also Morale v. Grigel*, 422 F. Supp. 988, 997 (D.N.H. 1976). While [Appellee's] roommate had common authority and could have consented to the search, she arrived after the initial entry of the officers and even upon arrival was not asked for consent.

17. The Court concludes that as a matter of law, two Texas police departments, Howard Payne University Department of Public Safety and the City of Brownwood Police Department, conducted a warrantless search of the residence of [Appellee] without the existence

of any exigent circumstance, including plain view, and failed to obtain consent.

18. The University acting by and through its Residence Hall Director, Nancy Pryor, had no authority to consent to or join in the police search for evidence of a crime under the circumstances of this case.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment provides protection from "unreasonable" searches and seizures by state actors. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). A search conducted without a warrant is generally considered unreasonable. *Id.* Whether a search was reasonable under the Fourth Amendment is a mixed question of law and fact. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

For purposes of the Fourth Amendment, a "search" occurs when the government violates a subjective expectation of privacy that society considers objectively reasonable. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001). However, the Fourth Amendment proscribes only governmental action, not action by a private individual who is not acting as an agent of the government or with the knowledge and participation of a government official. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Even a wrongful search or seizure by a private citizen does not deprive the government of the right to use evidence obtained from the wrongful search. *See Walter v. United States*, 447 U.S. 649, 656 (1980).

The State's argument is premised on two contentions: (1) that Appellee no longer possessed a subjective expectation of privacy that society is willing to recognize as reasonable after the resident assistants found the contraband in her dorm room and (2) that the officers' entry into her dorm room did not constitute a search. We disagree with both of these contentions.

7

We begin our analysis by addressing the "search" question. The entry into a residence by police officers is a search for purposes of the Fourth Amendment. *Valtierra*, 310 S.W.3d at 448. As noted by the Texas Court of Criminal Appeals in *Spring v. State*, 626 S.W.2d 37, 41 (Tex. Crim. App. [Panel Op.] 1981):

> (P)hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, and (i)n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Neither may that threshold be reasonably crossed without a warrant by police officers, nor may the locked door be opened by the landlord or his agent to permit them to do so, for to uphold such an entry, search and seizure without a warrant would reduce the (Fourth) Amendment to a nullity and leave (tenants') homes secure only in the discretion of (landlords).

(alterations in original) (citations omitted) (internal quotation marks omitted). Thus, the officers' entry into Appellee's dorm room constituted a search.

We must next answer the question of whether Appellee had a subjective expectation of privacy in her dorm room that society considers objectively reasonable. This is a question of law we review de novo. *Hardy*, 963 S.W.2d at 523; *Villarreal v. State*, 935 S.W.2d 134, 146 (Tex. Crim. App. 1996); *see Wade*, 422 S.W.3d at 667; *Valtierra*, 310 S.W.3d at 447. Courts have held that "a student who occupies a college dormitory room enjoys the protection of the Fourth Amendment." *Piazzola v. Watkins*, 442 F.2d 284, 289 (5th Cir. 1971); *see also People v. Superior Court*, 49 Cal. Rptr. 3d 831, 848–49 (Cal. Ct. App. 2006). The First Court of Appeals concluded that a student "had an expectation of privacy in his dorm room and is thus afforded Fourth Amendment protection." *Grubbs v. State*, 177 S.W.3d 313, 318 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We agree and accordingly conclude that Appellee enjoyed the same Fourth Amendment protection from unreasonable searches and seizures in her dormitory room as would any other citizen in a private home. *See id.*; *see also People*, 49 Cal. Rptr. 3d at 849.

There is no dispute that the resident assistants and Pryor had authority to conduct the room check of Appellee's dorm room under the authority of the various provisions that Appellee agreed to in accepting to live in on-campus student housing. Furthermore, there is no dispute that these individuals were not state actors. In reliance upon *Hardy*, the State contends that the discovery of the contraband by the dorm personnel diminished Appellee's expectation of privacy concerning a subsequent search by law enforcement. The defendant in *Hardy* was involved in an automobile accident. *Hardy*, 963 S.W.2d at 517–18. Hospital personnel, that were not government agents, drew the defendant's blood and analyzed it to determine its alcohol content for medical purposes. *Id.* A state trooper subsequently obtained the test results with a grand jury subpoena. *Id.* The Court of Criminal Appeals concluded that the defendant did not have a reasonable expectation of privacy in the test results. *Id.* at 526–27. In reaching this holding, the court noted that the "person's interest in bodily integrity" was not an issue because the blood was obtained and tested by medical personnel solely for medical purposes. *Id.*

The analysis in *Hardy* is inapplicable to facts in this case. The physical intrusion in *Hardy* in the form of withdrawing the defendant's blood from his body was performed by nongovernment actors. *Id.* at 517–18. In this case, the officers' entry into Appellee's dorm room constituted an actual, physical intrusion by government agents. Additionally, the State's contention that the discovery of contraband by dorm personnel had the effect of reducing her subjective expectation of privacy is not logical because there is no evidence that Appellee was aware that dorm personnel had searched her room or that they had discovered contraband in her room.

The State also relies on *Medlock v. Trustees of Indiana University* to support its position that Appellee no longer had a reasonable expectation of privacy. *Medlock v. Trustees of Ind. Univ.*, No. 1:11-CV-00977-TWP-DKL, 2011 WL

9

4068453, at *5 (S.D. Ind. Sept. 13, 2011). *Medlock* is also distinguishable from this case. *Medlock* involved an administrative proceeding with Indiana University rather than a criminal prosecution. *Id.* at *1. Next, the officer in *Medlock* observed the marihuana in plain view *prior to entering* the dorm room. *Id.* at *6. More importantly, the officer in *Medlock* actually obtained a search warrant. *Id.* We do not find that the State's reliance on *Medlock* is persuasive in light of *Grubbs*. *See Grubbs*, 177 S.W.3d at 318.

*Grubbs* is a relatively recent Texas case dealing with the search of a college dorm room. *Id.* at 316. A resident assistant received a complaint concerning the odor of marihuana coming from the defendant's dorm room. *Id.* University police were contacted at the request of the resident assistant as he proceeded to the defendant's dorm room. *Id.* Police officers met the resident assistant in the hallway outside of the defendant's dorm room and confirmed that the odor was marihuana. *Id.* After the inhabitants did not answer the door, the resident assistant entered the dorm room with a master key. *Id.* The resident assistant spoke with the inhabitants after entering the room. *Id.* The inhabitants of the dorm room then came to the doorway whereupon they gave the officers consent to search the dorm room. *Id.*

The court of appeals recognized that "a student who occupies a college dormitory room enjoys the protection of the Fourth Amendment." *Id.* at 318 (quoting *Piazzola*, 442 F.2d at 289). Accordingly, the court held that the defendant had an expectation of privacy in his dorm room and was thus afforded Fourth Amendment protection. *Id.* The court further recognized that the university's policies and procedures provided the resident assistant with "ample authority" to enter the defendant's dorm room. *Id.* at 319. The court ultimately concluded that the campus police officers did not violate the defendant's constitutional rights when they entered his dorm room with his consent. *Id.* at 321.

Contrary to the State's assertion that Appellee no longer had an expectation of privacy in her dorm room after the discovery of the contraband by dorm personnel, the critical inquiry in this case is the authority of the dorm personnel to consent to the officers' entry into the dorm room. One exception to the warrant requirement applies when a person voluntarily consents to a search. *Hubert*, 312 S.W.3d at 560. A third party may consent to a search of another's property if the third party has actual authority over the thing to be searched. *Id.* We examine the totality of the circumstances to determine whether it is reasonable under the Fourth Amendment for an officer to rely on the consent of another person to justify a warrantless search. *Id.*

The First Court of Appeals briefly touched upon this question in *Grubbs* by referring to a line of cases in support of the position that a resident assistant may not consent to an entry by police into a dorm room. 177 S.W.3d at 321 n.2. It was unnecessary for the court in *Grubbs* to explore this concept because the resident assistant was not the person that gave the officers consent to enter the dorm room—the actual residents of the dorm room gave the officers consent to enter. Accordingly, this case differs from the facts in *Grubbs* because the dorm personnel were the individuals in this case who gave the officers consent to enter Appellee's dorm room. Despite the authority given to the dorm personnel to enter the dorm room themselves, they simply did not have authority to give police officers consent to enter Appellee's dorm room. *See Piazzola*, 442 F.2d at 289–90; *Commonwealth v. McCloskey*, 272 A.2d 271, 273 (Pa. Super. Ct. 1970). As stated by the Fifth Circuit in *Piazzola*:

> [A] student who occupies a college dormitory room enjoys the protection of the Fourth Amendment. True the University retains broad supervisory powers which permit it to adopt the regulation heretofore quoted, provided that regulation is reasonably construed and is limited in its application to further the University's function as an educational

11

institution. The regulation cannot be construed or applied so as to give consent to a search for evidence for the primary purpose of a criminal prosecution. Otherwise, the regulation itself would constitute an unconstitutional attempt to require a student to waive his protection from unreasonable searches and seizures as a condition to his occupancy of a college dormitory room. Clearly the University had no authority to consent to or join in a police search for evidence of crime.

442 F.2d at 289–90 (footnotes and citations omitted).

The trial court did not err in concluding that Appellee had a reasonable expectation of privacy in her dorm room and that the entry into her dorm room by the officers of the Howard Payne University Department of Public Safety and the Brownwood Police Department implicated her Fourth Amendment protections. Additionally, the record supports the trial court's findings of fact that the officers entered Appellee's dorm room without either her consent or the consent of her roommate. Accordingly, we overrule the State's first issue.

In its second issue, the State challenges the trial court's determination that the evidence was not admissible under the plain view doctrine. The State contends that Officer Pacatte had a right to be inside Appellee's dorm room under the actual authority or apparent authority of the dorm personnel after the contraband was located. The State contends that, once Officer Pacatte was lawfully inside the dorm room, he had the right to seize the contraband because it was in his plain view.

Seizing contraband in plain view does not run afoul of the Fourth Amendment because the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). The plain view doctrine requires (1) that the law enforcement officers have a right to be where they were and (2) that it is immediately apparent that the items seized constitute evidence. *Id.* There is no disagreement that the items were immediately incriminating upon observation. Officer Pacatte testified, and the trial court found, that the items were evidence of a crime or contraband. The question is

whether Officer Pacatte was lawfully in Appellee's dorm room when he saw the items on the floor. In this regard, Officer Pacatte testified, and the trial court found, that he did not observe the contraband until he had entered Appellee's dorm room.

We have previously determined that dorm personnel did not have actual authority to permit the officers to enter Appellee's dorm room for the purpose of conducting a criminal investigation. Accordingly, the trial court found that the plain view doctrine is inapplicable from the perspective of actual authority because officers did not "have a right to be where they were" when they observed the contraband. With respect to the State's apparent authority contention, this argument was not made during the suppression hearing other than in the State's closing argument when the prosecutor stated, "And Ms. Pryor, as an official at the university, would have had apparent authority to invite the officer in. That is something that has not been at all addressed."

We review de novo the issue of whether a third party had apparent authority to consent to a search of another's property because this inquiry involves a mixed question of law and fact. *Hubert*, 312 S.W.3d at 559–60. A third party's actual authority over the property is not a prerequisite for a valid consensual search. *Id.* at 560. Our law also recognizes that, in some circumstances, a valid consensual search may occur when a third party has "apparent authority" over the property. *Id.* When an officer has a reasonable but erroneous belief that a third party has actual authority over the thing to be searched, apparent authority exists and the search may be reasonable. *Id.* at 561. "Apparent authority is judged under an objective standard: 'would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). It is the State's burden to show by a preponderance of the evidence that the person who consented to the search had

apparent authority to consent. *Hubert*, 312 S.W.3d at 561–62. Consequently, the State has the burden to show that the officer who conducted the search reasonably believed, based on facts known to him at the time, that the consenting party had authority over the property. *Id.*

The State provided no evidence of apparent authority. The State specifically argued that apparent authority was not addressed at all. The evidence established that Officer Pacatte simply accompanied Pryor into Appellee's dorm room without any inquiry concerning her authority to permit his entry into the dorm room. We conclude that the trial court did not abuse its discretion when it determined that Pryor did not have apparent authority to consent to the search of Appellee's room. We overrule the State's second issue.

In its third issue, the State argues that the trial court erred when it applied the exclusionary rule and suppressed the contraband and Appellee's statements to Corporal Taylor. The State contends that Appellee must prove that suppression of the evidence would create deterrence in the future and that the deterrent value is high. The State maintains that, "[i]n order for the deterrent value to be high, the police must exhibit deliberate, reckless or grossly negligent disregard for Fourth Amendment rights." *See Davis v. United States*, 131 S. Ct. 2419, 2427 (2011) (citing *Hudson v. Michigan*, 547 U.S. 586, 596 (2006)).

The federal exclusionary rule is a deterrent sanction that bars the prosecution from introducing evidence obtained in violation of the Fourth Amendment. *Id.* at 2423. The Texas statutory exclusionary rule is broader than the federal exclusionary rule; the Texas rule applies to evidence that is obtained in violation of the federal and state constitutions, United States laws, and Texas laws. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); *Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010). Specifically, Article 38.23(a) of the Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of

any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." CRIM. PROC. art. 38.23(a). The primary purpose of Article 38.23(a) is to deter unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution. *Wilson*, 311 S.W.3d at 459.

The "fruit of the poisonous tree" doctrine serves to exclude from evidence both direct and indirect products of Fourth Amendment violations. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008). However, evidence is not classified as a fruit that must be excluded merely because it would not have been discovered but for the violation. *Wong Sun*, 371 U.S. at 487–88; *Iduarte*, 268 S.W.3d at 550. "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun*, 371 U.S. at 488 (quoting JOHN MACARTHUR MAGUIRE, EVIDENCE OF GUILT 221 (1959)).

The Court of Criminal Appeals recently addressed the exclusionary rule and the factors to consider in applying the rule. *State v. Jackson*, 464 S.W.3d 724, 731–33 (Tex. Crim. App. 2015). The court considered the temporal proximity between the illegal search or seizure and the items to be excluded, the presence of any intervening circumstances, and the "purpose and flagrancy of the official misconduct." *Id.* at 731 (quoting *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)). However, the court did not say the burden rests with the defendant to prove any of these factors. *See id.* The State has not cited, and we cannot find, any authority for the proposition that a defendant carries the burden of proving the deterrent value.

15

Appellee had the initial burden of producing evidence to rebut the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Appellee carried this burden once she established that the search and seizure occurred without a warrant. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The burden then shifted to the State to prove the reasonableness of the search. *Id.* As discussed above, the State did not establish that the warrantless search was justified under the law. *Ford*, 158 S.W.3d at 492.

Appellee must also show that there was a causal connection between the police officer's violation of a law and the collection of evidence. *Pham v. State*, 175 S.W.3d 767, 772–74 (Tex. Crim. App. 2005). The burden then shifts back to the State to either disprove Appellee's evidence or raise an attenuation-of-taint argument to demonstrate that the causal chain was broken. *Id.* The State has not asserted that the attenuation doctrine should apply in this case, and we do not address it further.

Here, there was a causal connection between the officer entering Appellee's dorm room and the seizure of evidence. Officer Pacatte was called to Appellee's dorm room because some contraband had been found. Officer Pacatte testified that he had time to obtain a search warrant, but did not. Officer Pacatte simply entered Appellee's dorm room, seized the evidence, and then called the Brownwood Police Department. Appellee has shown there was a causal connection between the Fourth Amendment violation and the collection of evidence. *Pham*, 175 S.W.3d at 772–74; *see State v. Callaghan*, 222 S.W.3d 610, 615–16 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Next, we consider the factors discussed in *Jackson* to determine whether the trial court erred when it suppressed the contraband. *Jackson*, 464 S.W.3d at 731. The State has not argued any intervening or attenuation-of-taint factors. Thus, the absence of the intervening-circumstance factor dictates which of the remaining two *Brown* factors should carry greater significance. *Id.* at 731–32 (citing *State v.*

*Mazuca*, 375 S.W.3d 294, 306 (Tex. Crim. App. 2012)). "When police find and seize physical evidence shortly after an illegal stop, in the absence of the discovery of an outstanding arrest warrant in between, that physical evidence should ordinarily be suppressed, even if the police misconduct is not highly purposeful or flagrantly abusive of Fourth Amendment rights." *Id.* at 732 (quoting *Mazuca*, 375 S.W.3d at 306). When there is no intervening cause, the court considers the temporal proximity factor to be the most important. *Id.*

Emphasis on the temporal proximity factor favors the conclusion that the search of Appellee's dorm room, the seizure of the contraband, and Appellee's subsequent admission were indeed "obtained" by exploitation of the warrantless search. *Id.*; *Mazuca*, 375 S.W.3d at 306. Because the contraband was discovered by the police within a matter of seconds after Officer Pacatte entered Appellee's dorm room and because there was no intervening circumstance that provided justification for the search of Appellee's dorm room, we conclude that the taint of illegality had not been purged. The trial court did not err when it applied the exclusionary rule to the evidence seized. We overrule the State's third issue.

In its fourth issue, the State argues that the trial court erred when it suppressed Appellee's statements, and other evidence related to Appellee's arrest, as fruit of the poisonous tree. The State asserts that the basis for the suppression of the statements was the same as that for the suppression of the contraband and that, if the trial court erred when it suppressed the contraband, then the trial court also erred when it suppressed the statements. As discussed above, the trial court did not err when it suppressed the contraband seized. Therefore, the trial court did not err when it suppressed Appellee's statements. We overrule the State's fourth issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

JUSTICE

September 24, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.