

**In the**
**Court of Appeals**
**Second Appellate District of Texas**
**at Fort Worth**

_____

No. 02-20-00140-CR
No. 02-20-00149-CR

_____

JAMES CALVIN MASSEY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court Nos. 1572638D, 1632168D

Before Kerr, Birdwell, and Bassel, JJ.
Opinion on Rehearing by Justice Birdwell

## OPINION ON REHEARING

We grant the State's motions for rehearing, withdraw our prior opinion and judgments, and substitute the following.

The trial court found that an officer's frisk of appellant James Calvin Massey was not supported by reasonable suspicion. But the court nonetheless concluded that the drug evidence should not be suppressed for three reasons.

First, it found that Massey consented to the frisk. But Massey did no more than briefly acquiesce to the officer's command to turn around, and he began a struggle almost as soon as the search began. No reasonable trier of fact could find that this amounted to consent. The frisk was an illegal search.

Second, the trial court concluded that the taint of any illegality was attenuated when Massey committed criminal offenses after the frisk. We hold that Massey's alleged offenses, petty and predictable as they were, do not attenuate the taint of the illegal frisk.

Third, the trial court concluded that the officer found the drugs in plain view after Massey discarded them during the detention. But the officer violated the Fourth Amendment en route to that juncture. The State therefore may not avail itself of the plain view doctrine.

The discovery of the drugs spurred two things: a conviction for possession and, separately, the revocation of Massey's community supervision. As to the possession conviction, we hold that the erroneous denial of suppression was harmful. However,

as to community supervision, the evidence supports an independent ground for the revocation, which was his failure to report to the probation department as required. Because that ground alone is sufficient to support the revocation, we affirm the revocation.

So holding, we affirm in part and reverse and remand in part.

## I.  BACKGROUND

In 2018, Massey was indicted for possession of a controlled substance. He pleaded guilty and received eight years of deferred adjudication.

At around 11 A.M. on February 16, 2020, Officer Richard Lukowsky was patrolling the streets of Azle when he observed Massey driving a truck without a registration sticker. Officer Lukowsky pursued the truck as it pulled into a gas station. Officer Lukowsky was concerned for his safety; he associated that particular gas station with drug trafficking because police had made several felony drug arrests there.

Massey was standing at the front door of the closed gas station when Officer Lukowsky turned on his police lights and beckoned him over. Officer Lukowsky asked Massey if he had any weapons, and Massey said no. Officer Lukowsky requested Massey's driver's license. Massey gave him permission to retrieve it from the truck. Massey told Officer Lukowsky about his job and explained that he had tried to pay for a registration sticker but that he did not have enough money. Massey's hands were shaking, and he appeared nervous to Officer Lukowsky, though he was cooperative and

respectful. It was daylight, and the lot was empty except for the two men. Officer Lukowsky saw nothing that would indicate the presence of a weapon.

Still, Officer Lukowsky told Massey to turn around so that Officer Lukowsky could pat him down, and Massey turned around and raised his arms slightly. But as Officer Lukowsky started patting down his right pocket, Massey slipped his hand into his left pocket. Officer Lukowsky grabbed Massey's left arm and told him not to reach for his pocket. Massey strained against Officer Lukowsky's grip. Massey then ripped away from Officer Lukowsky and turned to face him. Officer Lukowsky called for backup. When Massey again reached for his pocket, Officer Lukowsky drew his gun. Massey pulled his keys out of his pocket and dropped them on the ground. Officer Lukowsky shouted at him to turn and put his hands behind his back. Massey turned but began walking away, saying that if Officer Lukowsky was going to shoot him, he should go ahead. Officer Lukowsky drew a taser and screamed at Massey to stop. Massey slid behind a metal air compressor and began to fish in his pocket once more, obscured from Officer Lukowsky's view. Officer Lukowsky circled behind him and tased him in the back, and Massey crumpled. He was handcuffed and searched, and within moments, Officer Lukowsky discovered a small plastic bag of methamphetamine on the ground by the air compressor, where Massey had just stood. Before Officer Lukowsky tased Massey, there was no methamphetamine on the ground. Massey was arrested.

4

The State moved to adjudicate Massey's guilt for the 2018 possession charge. It was alleged that Massey had breached the terms of his community supervision by committing felony drug possession and by failing to report to the probation department.

Massey moved to suppress the drug evidence. Among his arguments for suppression was his theory that the arresting officer did not have reasonable suspicion that Massey was armed and dangerous, as is required to justify a protective frisk. Massey contended that because the discovery of the drugs flowed from an illegal frisk and Massey's reaction to that frisk, the drugs should be suppressed as the fruit of the poisonous tree.

After hearing the evidence, the trial court denied suppression. The court reasoned that Massey's own independent actions, which bordered on a resisting offense, disrupted the causative flow from the frisk to the discovery of the methamphetamine, and his actions thus attenuated the taint of a potentially illegal frisk. "[W]hether the search was legal or illegal," the trial court concluded, "Mr. Massey did not have the right to resist in the manner that is shown on the video, so I'm going to deny the motion to suppress on that basis." After finding that Massey violated the terms of his probation, the trial court adjudicated his guilt and sentenced him to five years' confinement.

Separately, Massey was indicted for possession of a controlled substance. After his motion to suppress was denied, he pleaded guilty and was sentenced to five years'

5

confinement, to run concurrently with his other sentence. Massey appealed both convictions.

Before this court, the State argued for the first time that Massey consented to the search when he complied with Officer Lukowsky's instructions to turn around and submit to a protective frisk. On our own motion, we abated the case and remanded it for the trial court to prepare written findings of fact and conclusions of law with respect to consent and the other issues raised on appeal.[1]

The trial court approved the State's proposed findings of fact and conclusions of law. In them, the trial court found that Officer Lukowsky did not have reasonable suspicion to frisk Massey, but that the protective frisk was nonetheless justified by Massey's consent to the search. The trial court further concluded that even if the frisk were illegal, the taint from the illegality was attenuated when Massey resisted the search. Finally, the trial court concluded that even if the taint were not attenuated, the illegality would be immaterial because the drug evidence was not obtained as a result of the frisk, but by the discovery of the drugs in plain sight after Massey discarded them.

With the trial court's findings and conclusions in hand, we now proceed to evaluate Massey's issues on appeal.

---

[1]*See Meekins v. State*, 340 S.W.3d 454, 465 (Tex. Crim. App. 2011) ("[A]ppellate courts should have the trial judge's findings of fact before disagreeing with that judge's ruling on a motion to suppress.").

## II.    STANDARD OF REVIEW

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony.  *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).  Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) questions of application of law to fact that turn on evaluating credibility and demeanor.  *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when mixed questions of law and fact do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling.  *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in

the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. Even if the trial court gave the wrong reason for its ruling, we must uphold the ruling if it is both supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *State v. Martinez*, 569 S.W.3d 621, 623–24 (Tex. Crim. App. 2019). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Id.* at 624.

### III. GROUNDS FOR REVOCATION

In its motion to revoke, the State alleged that Massey had violated the terms of his community supervision by possessing a controlled substance and by failing to report to the probation department for three months in 2020. The trial court found both allegations to be true and revoked Massey's community supervision based on both violations.

On appeal, Massey did not challenge the finding that he failed to report as required. In his response to the State's motion for rehearing, though, Massey argues for the first time that the evidence is insufficient to prove that he failed to report. Massey maintains that he was unaware of the requirement to report to the probation department and that, therefore, this ground is insufficient to support revocation.

Assuming for the moment that this argument is properly before us on rehearing, *see Spielbauer v. State*, 622 S.W.3d 314, 319 (Tex. Crim. App. 2021), we cannot agree with it because the State proved Massey's failure to report by a preponderance of the evidence.

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking community supervision. *Cardona*, 665 S.W.2d at 493–94.

It has long been held that one sufficient ground will support the trial court's order revoking community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim.

9

App. 2009). To prevail on appeal, an appellant must successfully challenge all findings that support the revocation order. *Guerrero v. State*, 554 S.W.3d 268, 274 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Garcia v. State*, No. 02-15-00138-CR, 2017 WL 370924, at *2 (Tex. App.—Fort Worth Jan. 26, 2017, pet. ref'd) (mem. op., not designated for publication). "When the trial court finds several violations, we will affirm a revocation order if the State proved any one of them by a preponderance of the evidence." *Garcia*, 2017 WL 370924, at *2; *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd). Once sufficient evidence is presented of a violation of a community supervision condition, the trial court has broad discretion in choosing whether to continue, modify, or revoke the community supervision. *Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. [Panel Op.] 1979); *Brewer v. State*, No. 02-19-00382-CR, 2021 WL 924699, at *2 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op., not designated for publication).

Sufficient evidence shows that Massey violated the condition that required him to report to the probation department. Within the record is a copy of the terms of Massey's community supervision, which required Massey to "[r]eport to the Community Supervision and Corrections Department of Tarrant County, Texas, immediately following this hearing, and no less than monthly thereafter, or as scheduled by the court or supervision officer and obey all rules and regulations of the department." Massey's signature appears at the bottom of the document. *See McDaniel v. State*, No. 09-11-00094-CR, 2011 WL 4999459, at *1 (Tex. App.—Beaumont Oct. 19, 2011, no

10

pet.) (mem. op., not designated for publication) (rejecting a probationer's claim that he did not know of a reporting requirement in the terms of his community supervision because the terms bore his signature).  A probation officer testified that Massey had not fulfilled this reporting requirement:

> Q.  And based on a review of Mr. Massey's file, does it appear as though Mr. Massey reported every month like he was supposed to?
>
> A.  No, he did not.
>
> Q.  Okay.  And did he actually fail to report for—in March of 2020?
>
> A.  Yes.
>
> Q.  And did he fail to report in April of 2020?
>
> A.  Yes.
>
> Q.  And did he also fail to report in May of 2020?
>
> A.  Yes.[2]

Based on this record, we conclude that the State carried its burden to prove that Massey failed to report as required.  *See, e.g.*, *Greer v. State*, 999 S.W.2d 484, 488–89 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that although the evidence was "slim at best," the evidence was nonetheless sufficient to support revocation where a probation officer testified about failure to report based on contents of probation file).

---

[2]It should be noted that, although this testimony is the critical evidence supporting the State's motion for rehearing concerning the revocation, it was not brought to our attention in the original briefing by the State.

Because the finding of failure to report is sufficient to support the revocation of Massey's community supervision, we overrule Massey's sole point to the extent that he complains of the revocation. We consider the remainder of Massey's and the State's arguments only to the extent that they pertain to Massey's separate conviction for possession of a controlled substance.

## VI. LEGALITY OF THE DETENTION

Massey does not dispute that Officer Lukowsky was initially justified in detaining him for a traffic offense. However, Massey insists that Officer Lukowsky unlawfully prolonged the detention beyond what was justified by his initial suspicion. According to Massey, Officer Lukowsky engaged in an unlawful fishing expedition for evidence of wrongdoing, so the evidence must be suppressed.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158

12

S.W.3d at 492.  This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop.  *Id.*

The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission, which is to address the traffic violation that warranted the stop and attend to related safety concerns.  *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614 (2015).  "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."  *Id.*, 135 S. Ct. at 1614.  The seizure remains lawful only so long as unrelated inquiries do not measurably extend the duration of the stop.  *Id.* at 355, 135 S. Ct. at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 788 (2009)).  Once the original purpose for the stop is exhausted, police may not unnecessarily prolong the detention solely in hopes of finding evidence of some other crime.  *Kothe v. State*, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004).  The stop may not be used as a fishing expedition for unrelated criminal activity.  *Id.*

"But the Supreme Court has expressly rejected placing any rigid time limitations on *Terry* stops . . . ."  *Id.*  "[I]nstead, the issue is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'"  *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985)).

Nothing about the detention here suggests that it was unlawfully prolonged by inquiries unrelated to the traffic infraction and public safety. Officer Lukowsky's actions were prompt and tied to the tasks at hand. He approached Massey, explained the reason for the detention, asked for Massey's driver's license, inquired into the reason for the missing registration sticker, and initiated a frisk—all within the first two minutes of the stop. *See Lerma v. State*, 543 S.W.3d 184, 195 (Tex. Crim. App. 2018) (concluding that the detention was not illegally prolonged where the officer took similar actions in the first five minutes of the stop, at which point additional considerations justified further intervention). The next two minutes were spent grappling with Massey, dealing with the apparent threat that he posed, and discovering the methamphetamine. *See id.* When "police are acting in a swiftly developing situation . . . the court should not indulge in unrealistic second-guessing" in determining whether the search was illegally extended. *Sharpe*, 470 U.S. at 686, 105 S. Ct. at 1575. The entire exchange unfolded in four minutes. *See Grandberry v. State*, No. 02-13-00488-CR, 2014 WL 3029045, at *4 (Tex. App.—Fort Worth July 3, 2014, no pet.) (per curiam) (mem. op., not designated for publication) ("Delays of twenty-six minutes or longer have been found reasonable, depending on the balancing of the public interest served by the delay against the appellant's right to be free from arbitrary detentions and intrusions."). Thus, the investigation was not wrongly extended.

14

## V.   LEGALITY OF THE FRISK

Massey next argues that the protective frisk was illegal.  Massey contends that Officer Lukowsky did not have reasonable suspicion to believe that Massey was armed and dangerous, and thus the frisk was not defensible under the Fourth Amendment.

The trial court determined that the frisk was not justified by reasonable suspicion.  This determination is well supported by the record.  An officer is justified in engaging in a protective frisk if he reasonably suspects that the person who he has lawfully detained is presently armed and dangerous.  *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016).  "The intrusion must be based on specific articulable facts which, in the light of the officer's experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion."  *Id.*  In this case, the only articulable facts available to support a belief that Massey was armed and dangerous were that Massey (1) was nervous (2) in an area where there had been drug arrests.  *See Wade v. State*, 422 S.W.3d 661, 671 (Tex. Crim. App. 2013) (deeming nervousness "not particularly probative" in evaluating reasonable suspicion); *see also O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000) ("The Supreme Court has been 'careful to maintain' the 'narrow scope' of the pat-down exception." (quoting *Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S. Ct. 338, 343 (1979))).  There were no signs of a weapon, and Massey was at a safe distance, in broad daylight, without access to his vehicle, respectfully complying with the officer, who was the only other person in the parking lot—an apparently safe situation until the officer grabbed him and drew him

15

close, into a frisk that is now alleged to be illegal. Without any articulable facts reflecting a hazard to the officer, the initiation of the frisk was unsupported by reasonable suspicion.

However, the State maintains that Officer Lukowsky was nonetheless permitted to initiate the protective frisk because Massey consented to it. As the trial court found, when Officer Lukowsky asked Massey to turn around and submit to a pat-down, Massey turned around and raised his arms slightly. According to the State, these gestures signified Massey's consent to the pat-down, as the trial court also found. And as to the fact that Massey began resisting the pat-down a moment after it began, the State contends that this was simply the withdrawal of his consent. Thus, by the State's account, this fleeting consent is enough to justify the initiation of the frisk.

Under the Fourth Amendment, a search conducted without a warrant is per se unreasonable subject only to a few specifically established and well-delineated exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One of those exceptions is a search conducted with the person's voluntary consent. *Id.* Under Texas law, the State must prove voluntary consent by clear and convincing evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). The consent must be shown to be positive and unequivocal, and there must not be any duress or coercion, actual or implied. *Id.* Consent is not established by showing mere acquiescence to a claim of lawful authority. *Carmouche*, 10 S.W.3d at 331. The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances.

16

*Weaver*, 349 S.W.3d at 526. "Consent to search is not to be lightly inferred." *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985); *Corea v. State*, 52 S.W.3d 311, 316 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

A person's consent to a search can be communicated to law enforcement in a variety of ways, including by words, actions, or circumstantial evidence showing implied consent. *Meekins*, 340 S.W.3d at 458. Thus, Texas courts have held that where law enforcement requests consent for a search or otherwise puts the question of consent to the detainee in a way that does not indicate compulsion, a person may answer that question in the affirmative by a gesture indicating that the search is permitted. For instance, in *Kendrick v. State*, the investigating officer "requested appellant's permission to conduct a pat-down," and the court of appeals held that when appellant stood up and raised his hands in response to this question, he thereby indicated his consent to the search. 93 S.W.3d 230, 234 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Likewise, in *Todd v. State*, the investigating officer asked for permission to search the appellant's vehicle. No. 08-03-00443-CR, 2005 WL 1124262, at *5 (Tex. App.—El Paso May 12, 2005, no pet.) (not designated for publication). The defendant "threw up his arms in the direction of the vehicle," and the appellate court upheld the determination that his gesture communicated a response of consent. *Id.* In *Salinas v. State*, the officer requested permission to perform a pat-down, and the court held that appellant indicated his consent to the search in part by turning his back and raising his hands. No. 13-15-00310-CR, 2016 WL 2747770, at *1, *4 (Tex. App.—Corpus Christi–

17

Edinburg May 5, 2016, no pet.) (mem. op., not designated for publication). In *McAllister v. State*—the case upon which the State principally relies—the driver of a car was arrested, and his passenger asked an officer for a ride to his mother's house. 34 S.W.3d 346, 349–50 (Tex. App.—Texarkana 2000, pet. ref'd). The officer agreed but told the passenger he would have to be patted down before he would be allowed to get in the patrol car. *Id.* at 350. In reply, the passenger "raised his hands to about chest level." *Id.* Because the circumstances left the passenger under "no compulsion" to accept the ride or the frisk it entailed, the court held that the passenger's gesture communicated his consent to the search. *See id.* at 351; *see also O'Hara*, 27 S.W.3d at 553 ("[I]f an individual volunteers to ride in a police car, he may be subjected to a routine pat-down search before being allowed in the car.").

But where the officer instead couches the issue as a command or directive to comply with a search, verbal or nonverbal responses that do not clearly indicate consent—as opposed to mere acquiescence—are seldom deemed manifestations of consent. For instance, this court rejected a claim of consent to a prolonged detention where the officer told the appellee that he would be conducting a dog-sniff search and instructed the detainee to start his truck, turn the fan on high, roll up the windows, and stay in the vehicle, and the appellee responded "okay" as he complied. *State v. Marino*, No. 2-01-474-CR, 2003 WL 851953, at *2 (Tex. App.—Fort Worth Mar. 6, 2003, pet. ref'd) (mem. op., not designated for publication). We held the officer's framing of the issue as a command rather than a request for consent weighed against a finding of

consent; "[b]y stating his intentions and instructing appellee on how to cooperate rather than requesting permission to prolong the detention for the canine sweep, Officer Sheffield indicated to appellee that he had the authority to conduct the canine sweep without appellee's consent." *Id.* We concluded that the appellee's response was nothing more than mere acquiescence to a claim of lawful authority. *Id.*

Likewise, the district court attached weight to the absence of a request for consent in *United States v. Curtis*, 490 F. Supp. 3d 1183, 1196 (S.D. Tex. 2020), *appeal dismissed*, No. 20-20570, 2020 WL 9425159 (5th Cir. Nov. 12, 2020). "One thing that didn't happen is obvious—no officer or other personnel on the scene ever asked [the appellant] for permission to enter his home." *Id.* "That failure of specific request weighs against a finding of voluntary consent here." *Id.* In the absence of any request for consent, the court held that the appellant's "equivocal" interactions with officers did not demonstrate his implied consent to the search. *Id.*

Here, no witness testified that Massey consented to the search, and there were no written or verbal indicia of consent. The State's argument for consent rests solely on Massey's gesture of turning around. But the way that Officer Lukowsky elicited that gesture undermines any finding of consent. About two minutes into the detention, Officer Lukowsky said to Massey, "You don't have any weapons on you, do you?" Massey replied, "No." Officer Lukowsky then directed Massey, "Just go ahead and turn around, I'm going to pat you down just for my safety." Massey initially turned around and raised his arms slightly. Officer Lukowsky did not request consent to search

19

Massey. Rather, he infused the issue with compulsion, directing Massey to turn around and comply with a search of his person. The officer's framing of the issue militates in favor of a determination that Massey's response was merely an acquiescence to an assertion of lawful authority.

The State's case for consent only grows thinner when considering the rest of the encounter. As soon as Officer Lukowsky attempted to pat him down, Massey put his hand in his pocket and began pulling away. Officer Lukowsky gripped his arm, but Massey ripped free, backed away, and continued to defy the officer's attempts to detain and search him until he was tased. Massey's struggle against the search was so vigorous that, on appeal, the State now argues that Massey could and should have been charged with a resisting offense. A struggle is not a hallmark of genuine consent to a search.[3]

Even viewing the record in the light most favorable to the prosecution, then, a rational trier of fact could not conclude by clear and convincing evidence that Massey voluntarily consented to the search. *See Meekins*, 340 S.W.3d at 459 n.24. In the absence of a warrant or any other exception to the warrant requirement, the search was per se illegal. *See id.* at 458.

---

[3]Indeed, the case for consent was so slight that the State did not even think to argue at the suppression hearing that Massey consented to the search. The trial court, in its initial oral findings, did not find that Massey consented to the search. It was only when the case reached the appeal stage that the State came up with this ex post facto justification. When we abated and remanded the case to the trial court for written findings and conclusions, the trial court simply approved the State's proposed finding that Massey consented to the search.

20

## VI.   ATTENUATION

The State argues in the alternative that even if the search was illegal, any taint from the illegality was attenuated by Massey's subsequent criminal conduct.  According to the State, Massey committed two offenses when he broke from Officer Lukowsky's grip and moved backward:  resisting a search and evading detention.  *See* Tex. Penal Code Ann. §§ 38.03–.04.  According to the State, these intervening offenses vitiate the connection between the illegal pat-down and the discovery of the methamphetamine, such that the trial court properly denied suppression.

The principal judicial remedy to deter Fourth Amendment violations is the exclusionary rule, which often requires trial courts to exclude unlawfully seized evidence in a criminal trial.  *Utah v. Strieff*, 579 U.S. 232, 237, 136 S. Ct. 2056, 2061 (2016).  "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree."  *Id.*, 136 S. Ct. at 2061 (internal quotation marks omitted).

Appended to this rule, there are doctrines that "refine the situations in which the illegally obtained evidence can be admitted at or excluded from trial."  *Day v. State*, 614 S.W.3d 121, 128 (Tex. Crim. App. 2020).  One is the attenuation doctrine.  *Id.*  Under this doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has

21

been violated would not be served by suppression of the evidence obtained." *Strieff*, 579 U.S. at 238, 136 S. Ct. at 2061 (internal quotation marks omitted).

To determine whether the attenuation doctrine applies, we ask "whether, granting establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *State v. Jackson*, 464 S.W.3d 724, 731 (Tex. Crim. App. 2015). Neither the Fourth Amendment exclusionary rule nor our own statutory exclusionary rule, embodied in Article 38.23(a) of the Texas Code of Criminal Procedure, requires the suppression of evidence that was not "obtained" as a result of some illegality. *Id.* Depending on how removed the actual attainment of the evidence is from the illegality, the ordinary person may not consider that evidence to have been "obtained" by that illegality. *Wehrenberg v. State*, 416 S.W.3d 458, 469 (Tex. Crim. App. 2013).

Three factors guide our attenuation analysis. *Strieff*, 579 U.S. at 239, 136 S. Ct. at 2061–62. First, we look to the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. *Id.*, 136 S. Ct. at 2062. Second, we consider the presence of intervening circumstances. *Id.*, 136 S. Ct. at 2062. Third, we examine the purpose and flagrancy of the official misconduct. *Id.*, 136 S. Ct. at 2062.

The presence or absence of an intervening circumstance dictates which of the two remaining factors should carry greater significance:

When police find and seize physical evidence shortly after an illegal stop, in the absence of the discovery of an outstanding arrest warrant in between, that physical evidence should ordinarily be suppressed, even if the police misconduct is not highly purposeful or flagrantly abusive of Fourth Amendment rights. Under this scenario, temporal proximity is the paramount factor. But when an outstanding arrest warrant is discovered between the illegal stop and the seizure of physical evidence, the importance of the temporal proximity factor decreases. Under this scenario, the intervening circumstance is a necessary but never, by itself, wholly determinative factor in the attenuation calculation, and the purposefulness and/or flagrancy of the police misconduct, *vel non*, becomes of vital importance.

*Jackson*, 464 S.W.3d at 731–32 (quoting *State v. Mazuca*, 375 S.W.3d 294, 306–07 (Tex. Crim. App. 2012)).

The courts are not of one mind as to whether and when a subsequent criminal offense, committed after an illegal seizure or search, will operate as an intervening circumstance. But the disparity in the decisions appears to have much to do with the gravity of the subsequent offense and the degree to which it is an expectable result of illegal police action. *See State v. Alexander*, 595 A.2d 282, 285 (Vt. 1991) (reasoning that not all subsequent crimes will act as intervening circumstances, only ones sufficiently "serious" to be "distinct"). The more serious and unforeseeable the subsequent offense is, the more apt it is to be deemed an intervening circumstance that tends to free the resulting evidence from any taint. *See United States v. Brodie*, 742 F.3d 1058, 1063 (D.C. Cir. 2014) (collecting examples). For example, in *Matienza v. State*, officers attempted to detain the appellant on drug charges, and he brandished a gun and pointed it at an officer. *See* 699 S.W.2d 626, 626–27 (Tex. App.—Dallas 1985, pet. ref'd). The ensuing

23

searches revealed cocaine.  *Id.* at 627.  The court of appeals rightly upheld the denial of the appellant's motion to suppress this evidence, reasoning that his extreme act served as an intervening circumstance that tended to purge the resulting evidence of any taint. *Id.* at 628.

But conversely, if the crime is petty and relatively predictable as a product of an unlawful detention or search, the evidence revealed is better viewed as an extended derivation of the illegal police action.  "Incriminating admissions and attempts to dispose of incriminating evidence are common and predictable consequences of illegal arrests and searches, and thus to admit such evidence would encourage such Fourth Amendment violations in future cases."  LaFave, *Crime committed in response to illegal arrest or search as a fruit*, 6 Search & Seizure § 11.4(j) (6th ed.).  The supreme courts of Delaware and New Hampshire have held that milder cases of resisting arrest did not constitute intervening circumstances.  *Jones v. State*, 745 A.2d 856, 872–73 (Del. 1999); *State v. Beauchesne*, 868 A.2d 972, 982–83 (N.H. 2005); *accord Commonwealth v. Augustus*, No. 1603-15-1, 2016 WL 1002095, at *6–7 (Va. Ct. App. Mar. 11, 2016) (reaching a similar conclusion, reasoning that "a non-violent or non-threatening crime" was less apt to be deemed an intervening circumstance); *see also United States v. Gaines*, 668 F.3d 170, 174–75 (4th Cir. 2012).  Other courts have held that simply running away from the detaining officers or attempting to dispose of evidence will not necessarily dissipate the taint.  *See Brodie*, 742 F.3d at 1063; *Johnson v. United States*, 253 A.3d 1050, 1058 (D.C. 2021) ("Here, appellant's flight, on foot, did not constitute . . . a serious risk to the public safety when

24

compared to the cases cited by the government."); *State v. Owens*, 992 N.E.2d 939, 942–43 (Ind. Ct. App. 2013); *Thornton v. State*, 214 A.3d 34, 56–57 (Md. 2019).

Massey's alleged offenses—resisting search and evading detention on foot—fall into this latter category. Massey was not violent, he had no weapons, and his alleged offenses consisted largely of trying to free himself from the grip of an illegal search. Because neither offense marked a severe departure from the common, if regrettable, range of responses to an unlawful frisk, they do not constitute intervening circumstances.

In the absence of intervening circumstances, the "physical evidence should ordinarily be suppressed, even if the police misconduct is not highly purposeful or flagrantly abusive of Fourth Amendment rights. Under this scenario, temporal proximity is the paramount factor." *Jackson*, 464 S.W.3d at 732. Only a minute passed between the illegal frisk and the time that Massey was tased. Another minute passed between the tasing and the discovery of the methamphetamine.

Because the dominant factor of temporal proximity strongly favors suppression, we hold that Massey's alleged offenses during the detention did not attenuate the taint of Officer Lukowsky's illegal frisk.

## VII. PLAIN VIEW

The State next ventures that the evidence is admissible because Officer Lukowsky discovered it in plain view. It is the State's position that because the

contraband was found in the open at a public place, it is admissible under the plain view doctrine.

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S. Ct. 2022, 2037 (1971). "But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure." *Id.*, 91 S. Ct. at 2037. "The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal." *Id.*, 91 S. Ct. at 2037.

Three requirements must be met to justify the seizure of an object in plain view: (1) law enforcement officials must lawfully be where the object can be plainly viewed; (2) the incriminating character of the object in plain view must be immediately apparent to the officials; and (3) the officials must have the right to access the object. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013). In determining whether the officer had a right to be where he was, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Vaughn v. State*, 459 S.W.2d 869, 871 (Tex. Crim. App. 1970) (quoting *Harris v. United States*, 390 U.S. 234, 236, 88 S. Ct. 992, 993 (1968)).

As we have determined, Officer Lukowsky violated the Fourth Amendment en route to the vantage point where he discovered the methamphetamine. "[I]n light of the unjustified pat[-]down, the State cannot invoke the 'plain view' doctrine . . . ." *State v. Bishop*, No. 13-16-00322-CR, 2017 WL 1089681, at *6 (Tex. App.—Corpus Christi–Edinburg Mar. 23, 2017, no pet.) (mem. op., not designated for publication); *see State v. Rodriguez*, 529 S.W.3d 81, 90–91 (Tex. App.—Eastland 2015), *aff'd*, 521 S.W.3d 1 (Tex. Crim. App. 2017); *Paulea v. State*, 278 S.W.3d 861, 867 n.5 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

In its motion for rehearing, the State notes that when Officer Lukowsky discovered the methamphetamine, he was in a public place where he otherwise had the right to be. The State suggests that because Officer Lukowsky was lawfully present in a public place when he discovered the methamphetamine, he had a right to be in the position where he observed the methamphetamine, which should pave the way for admission under the plain view doctrine.

But "[t]he Fourth Amendment 'protects people, not places.'" *Love v. State*, 543 S.W.3d 835, 840 (Tex. Crim. App. 2016) (quoting *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511 (1967)), *abrogated in part on other grounds*, *Holder v. State*, No. PD-0026-21, 2022 WL 302538, at *2 (Tex. Crim. App. Feb. 2, 2022). What a person "seeks to preserve as private, even in an area accessible to the public [such as the public phone booth at issue in *Katz* itself], may be constitutionally protected." *Id.* (quoting, with editorial

alteration, *Katz*, 389 U.S. at 351, 88 S. Ct. at 511).  We are unpersuaded that the setting of a public place should cinch the issue for the State or undo the effect of the illegal frisk.

The State cites *State v. Milos*, a Nebraska case with facts somewhat similar to those present here, for the proposition that Officer Lukowsky's presence in a public place should save the evidence from suppression under the plain view doctrine.  *See* 882 N.W.2d 696 (Neb. 2016).  But unlike this case, the *Milos* court determined that no Fourth Amendment violation had occurred prior to discovery of the contraband.  *Id.* at 704.  By contrast, we have determined that Officer Lukowsky violated the Fourth Amendment in reaching his viewpoint, and again, the officer must not have violated the Fourth Amendment in arriving at the position from which the evidence could be plainly viewed.  *See Walter*, 28 S.W.3d at 541.  That distinction limits the utility of any analogy between the cases.

A better comparator is *Bishop*, the facts of which are also similar to those present here.  2017 WL 1089681, at *1.  Like Massey, Bishop was in a public place (a roadway), and among the only facts available to support a reasonable suspicion that Bishop was armed were his nervousness and a recent history of criminal activity in the area.  *Id.* Like Massey, Bishop repeatedly put his hands in his pockets, and the officer subjected him to an unjustified frisk.  *Id.*  Like Massey, the controlled substances were not discovered through the officer's probing during a search but by viewing the drugs after the defendant's actions, taken in response to his exchange with the officer, revealed the drugs: Bishop turned around in response to the officer's commands and put his hands

28

on the patrol car, whereupon the officer saw the contraband protruding from his pocket; Massey discarded the contraband in response to the officer's illegal frisk, whereupon the officer saw the contraband on the ground. In *Bishop*, the officer had every right to be present in the public place where he discovered the contraband, but the plain view doctrine was nonetheless held to be unavailable because the officer violated the Fourth Amendment in that public place. *See id.* at *6.

The only meaningful difference between *Bishop* and this case is that the illegal search spurred Massey to discard the contraband, but that fact does not make the contraband admissible. Useful reference can be made to the abandonment doctrine. "[N]o person can reasonably expect privacy in property he abandons." *State v. Martinez*, 570 S.W.3d 278, 286 (Tex. Crim. App. 2019). The issue is not determined in the strict property-right sense but rather centers on whether the person voluntarily discarded, left behind, or otherwise relinquished his or her interest in the property so that he or she could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Id.* "Abandonment consists of two components: (1) a defendant must intend to abandon property, and (2) a defendant must freely decide to abandon the property." *Id.* "Even if a defendant intended to abandon the property, such abandonment is not freely made—it is not voluntary—if it is the product of police misconduct." *Id.* Because police misconduct was the catalyst for Massey's attempt to dispose of the contraband, the fact that Massey discarded the evidence in a public place does not permit it be salvaged.

The State next insists that a resort to the plain view doctrine should be available because "[e]ven if Officer Lukowsky violated Appellant's Fourth Amendment rights during the pat-down, Officer Lukowsky did not objectively violate the Fourth Amendment in arriving at the location." The State urges us to use an "objective" standard in which Officer Lukowsky's "'subjective intent' for being at that specific location" is disregarded. The State cites the Supreme Court's pronouncement that "there is no reason [the police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." *Texas v. Brown*, 460 U.S. 730, 740, 103 S. Ct. 1535, 1542 (1983); *Walter*, 28 S.W.3d at 544. According to the State's thinking, any private citizen passing by could have freely observed the methamphetamine on the ground just as Officer Lukowsky did, and thus the plain view doctrine should apply.

Disregarding the officer's subjective intent is one thing; we place no reliance on Officer Lukowsky's intent in our analysis, for "a police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment." *Walter*, 28 S.W.3d at 542. Disregarding the officer's misdeed is quite another thing; we will not, in the name of objectivity, abstract the situation and ignore the violation that the officer personally committed in conducting the seizure and search. The evidence was not discovered by an innocent passerby, but by an officer who contravened the Fourth Amendment in reaching the position where he discovered the contraband. *See Vaughn*, 459 S.W.2d at 871. The plain view doctrine is therefore inapplicable.

30

## VIII. HARM

Having found error, we now turn to the question of harm. The admission of evidence that was obtained in violation of the Fourth Amendment is an error of constitutional magnitude. *Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001). Because the error is constitutional, Rule 44.2(a) requires us to reverse the conviction unless we determine beyond a reasonable doubt that the trial court's denial of suppression did not contribute to the conviction. *See* Tex. R. App. P. 44.2(a); *Love*, 543 S.W.3d at 846. In applying the "harmless error" test, we ask whether there is a "reasonable possibility" that the error might have contributed to the outcome. *Love*, 543 S.W.3d at 846. If the denial of the motion to suppress contributed in some measure to the State's leverage in the plea-bargaining process and may have contributed to the appellant's decision to relinquish his constitutional rights of trial and confrontation, we cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Chidyausiku v. State*, 457 S.W.3d 627, 631–32 (Tex. App.—Fort Worth 2015, pet. ref'd); *see Holmes v. State*, 323 S.W.3d 163, 174 (Tex. Crim. App. 2010) (op. on reh'g).

As to Massey's decision to plead guilty to the possession offense, the State's victory-in-error at the suppression hearing gave the State the ability to offer an essential piece of evidence in a prosecution for possession of a controlled substance: the controlled substance itself. *See Falero v. State*, No. 02-19-00205-CR, 2020 WL 1949018, at *1 n.3 (Tex. App.—Fort Worth Apr. 23, 2020, pet. ref'd) (mem. op., not designated for publication) ("If the State's primary evidence in support of Falero's conviction—

31

the methamphetamine—should have been suppressed, then Falero would be entitled to a reversal of the trial court's judgment . . . ."). The error had an evident suasive effect on Massey's decision to plead guilty, given that he decided to enter this plea shortly after the denial of his motion to suppress. *See Wheeler v. State*, 573 S.W.3d 437, 446 (Tex. App.—Fort Worth 2019) ("Wheeler pleaded guilty only after the trial court denied his motion to suppress, indicating that the trial court's denial was a factor in his decision to plead guilty."), *aff'd*, 616 S.W.3d 858 (Tex. Crim. App. 2021).

We therefore cannot conclude beyond a reasonable doubt that the erroneous denial of suppression did not contribute to Massey's decision to plead guilty. To that extent, we sustain Massey's sole point as it pertains to Massey's conviction for possession of a controlled substance.

## IX. CONCLUSION

In appellate cause number 02-20-00140-CR, we affirm the trial court's judgment revoking Massey's community supervision. In appellate cause number 02-20-00149-CR, we reverse the trial court's judgment of conviction and remand the case to the trial court for further proceedings consistent with this opinion.[4]

/s/ Wade Birdwell
Wade Birdwell
Justice

Publish

Delivered: March 3, 2022

---

[4]We deny the State's motion for en banc reconsideration as moot.